Our final case today is 2017-1071 Henderson v. DVA. Please proceed, Mr. Brown. I don't know if it's good morning or good afternoon. I think it's probably good afternoon by now. My name is Mike Brown. I am here representing Mr. Henderson on appeal. Cathedral Henderson was a 23-year employee with the Veterans Administration with an impeccable record and no disciplinary actions have ever been assigned or taken against him. He had an impeccable record up until the time when he advised his employees to close 2,700 registered unresolved cases against veterans, even though they still contained open information that had not yet been fully resolved. As charged in the indictment. Yes, Judge Moore, that's correct. And in fact, the opportunity... He was charged on 50 separate counts of making false statements. Is that correct? That's correct. And those facts were adjudicated, by the way, in a criminal proceeding that is now before the 11th Circuit. So that's the status of where we are. Back in July of 2015, he had only been indicted on those 50 charges. Out of 2,700 possibilities, he was indicted on 50. Just out of curiosity, did they try to bring 2,700 charges? They did not. How many did they bring? They brought 50. Okay. All right. Keep going. And in the period of time, his division was given six days to close 2,700 consult requests that had been left open for a period of three years. Not by his group, which was not the non-veteran's, excuse me, the non-veteran's associations care coordinating group, but by another group. He was detailed to that group without any experience and asked to supervise five other employees who had absolutely no experience. And during the process of processing 2,700, allegedly there were 50 over which he had problems as far as the computerized information was concerned. Allegedly, there were 50 people who did not receive outside consults, did not receive any kind of offer of an outside consult, and did not have any kind of disqualification by refusal to take a consult. The indictment said, at least I think I'm quoting from it, that he falsely declared that the consults had been completed or refused by the veteran when he knew the consults were still pending and unresolved. That's what it said. There was no process by which he could do that. There's no process by which he could declare anything without the help and assistance of the five people that worked under him and without the authorization of the people that worked over him. Judge Moore, in over 100,000 such cases that were disclosed in the scandal that broke in 2014, around the time that this became an issue for Mr. Henderson, there has been one person in all of the Veterans Administration that has been charged with a crime and convicted of it. And that is Mr. Henderson. He was taken out of his employment by virtue of this indictment. He was denied any kind of compensation, that is any kind of pay, by virtue of this action. And as a result, he has now been out of work for over 36 months. What about whatever happened with the veterans whose benefits claims he falsely closed or ordered closed or had closed based on the indictment? What happened to them? Because these are men and women that served our country with distinction and had medical problems that they claim they were entitled to disability benefits for or medical help for, and he ordered that they're, according to the indictment, I have to accept as true that he knew they had not received the consultations that they were entitled to and nonetheless ordered those cases to be closed against the veterans' best interests. What about them? What happened to them? Have those cases been reopened, to your knowledge, and have the veterans gotten the medical treatment that they were entitled to before he did this? They were never denied any medical treatment. The question wasn't whether or not they were going to receive these consults. It was a matter of scheduling the consults. That was it. That was the total issue. I thought that he closed unresolved authorizations for consults, which was to terminate the consideration of whether such consults would, in fact, be authorized by the government. Am I mistaken in my understanding? Yes, Your Honor, you are. As a matter of course, if the consult is closed on the computer, computerized system they have- Well, tell me what he did then. What did he do? I read- Well, we're trying to figure that out ourselves, Judge Moore. In fact, the- He did. He did. Because that's all that matters. I'm not a fact finder. I'm not supposed to look behind it. You're telling me this indictment on its face is not good enough for me to accept that the government was able to suspend him indefinitely in light of it. So what is the face of the indictment? I think you're putting your finger right on it. The indictment says one thing, the facts are completely different. My client is charged under the indictment, he has to try to figure out for himself what is going on. One of the interesting things about the indictment, if you look at it closely, is that the names of the patients that supposedly did not receive their consults are not identified. There's just unidentifiable information provided, dates that are provided on which he allegedly did this, among 2,700 people, 50 of them, he has to try to guess who they are. There's no way for him to know. And that did not become apparent to him until well after his job was taken from him, and that's what we're here about today. Was there due process involved in his dismissal? I have a fact question for you. I think you had said, and maybe I misheard, but you said he only had one week to close cases, but I thought the undersecretary gave the VA one year. The undersecretary may have given the VA one year, but as stated in the indictment on Supplemental Appendix 13, paragraph 11, between February 6, 2014 and February 11, 2014, Cathedral Henderson ordered employees of the VA under his direction to close over 2,700 unresolved authorized consults. And he was indeed ordered to do that, and he passed that order along to the people that were working for him. One of the things, one of the scandals in this case is the fact that somehow the undersecretary gets away with telling people that worked under her, you're going to close these consults within a period of time, without herself ensuring that the terms on which those consults were closed were commensurate with medical need. That did not happen in this case. For Cathedral Henderson to have been accused of not closing these correctly is a little bit like charging somebody who has absolutely no responsibility for it for not operating a light down on the corner. I'm still confused. I apologize. But I thought we've got the undersecretary providing a year, and then Mr. Henderson waits and does this on February 6th and February 11th. I'm still having a hard time understanding the deadlines we're approaching, so he closed them, but not because he didn't have notice from the undersecretary. He didn't work for the undersecretary in that respect. He was assigned, he was detailed to that, the non-veterans care coordinator or the consult coordinator. He was designated to that division. He wasn't even, that's not his job description, he's a program analyst. He was designated. I understand. There's just nothing in the record to support this particular aspect. Well, there's nothing in the indictment that explains it. That's the problem. He gets an indictment that says, look, you did this between February, the dates of February the 6th through February the 11th of one year, which is the time that he was detailed over there to specifically for the purpose of closing those 2,700 consults. And that's what the indictment says. And it is very confusing, and that's just one of the reasons we're here, Judge, is because there is no way that anybody reading this indictment has any knowledge, has any actual knowledge of what he or she might be charged with. It's just not there. We don't even have the names of the people that are involved. We don't even have the people that he was, that were detailed to work under him, who actually made the entries. Not him, but those people are the ones that actually made the entries into the computer. They're not included in this. This is the argument, presumably, you're making, part of the argument you're making to the Eleventh Circuit? This is the argument that is being made to the Eleventh Circuit, yes. And it is also an argument that was made at trial to the trial judge. But we're here today because he lost his job without any adjudication of these matters. None at all. The mere fact he was charged was enough. He wasn't just charged, right? He was indicted. That's the difference. We do have case law that says a mere arrest isn't enough and you rely on it, but that's not what we have here. You have to explain to me why I should say an indictment by a grand jury on 50 separate counts is like, is as speculative as an arrest. Do you understand what I'm trying to get at? To win your case, you've got to convince me that an indictment, which is not just a charge, it is a grand jury has reviewed it and decided to move forward. Okay. In the world of due process, the grand jury doesn't hear from him at all. The grand jury has no participation with the facts in an adversarial way. They presented the case in this event by the employer who is trying to blame this on Mr. Henderson. Pure and simple. This is the reason that due process exists for these kinds of situations. He's supposed to have a due process to keep getting paid during the period of his suspension. That's what the due process is supposed to be about. Well, he's supposed to have due process to keep getting paid during his suspension so long as the suspension, what is the language of the regulation? You may know better than me. Something about, is not likely to result in imprisonment or something. What is the language? I don't have it handy. It is. There are three things, but one of the, I think the element that you're referring to is that there is a reasonable cause to believe that he would be convicted under the charge. The truth is, this entire matter was presented to the grand jury, had to be, by virtue of the position and the knowledge, as Judge Stoll was just pointing out, in the indictment itself. It's very, very confusing because it's all about what happened at work. So the statute, I'm sorry, I found what I was referring to. It's the statute of 7513, and it says at least 30 days advance notice unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be proposed. So the question is, does an indictment on the 50 counts by the grand jury create a reasonable cause to believe the employee has committed the crime? Why doesn't it? Why isn't there a reasonable cause in light of the indictment? For two reasons, and one is that in this case, the reasonable cause is based on what the employer who is trying to get rid of him, trying to blame this on him, is proposing to the grand jury. I mean, that's all they hear from. It's like having a preclusive effect of a case where you don't even have the opportunity in the case that the preclusion is based on, you don't even have the opportunity to appear, you don't have the opportunity to present your side of the case, you don't have the opportunity to even know what the matter that is being presented against you is. And even after the indictment, there is still nothing that he can look at in that indictment and say, okay, this is what I'm being accused of. Okay, would you like to save the remaining time for rebuttal? What little time I have, yes, ma'am. Thank you. Mr. Brown? Ms. Kaprowski? Good morning, Your Honors, and may it please the Court. Mr. Henderson has failed to show that the MSPB abuses discretion or acted contrary to law. The question before the MSPB in terms of whether or not to invoke the criminal... There are cases that say an arrest alone wouldn't be enough to meet the standard articulated in 7513. Is that right? Correct, Your Honor. An arrest in conjunction... Why would that be? Why is it that an arrest alone is not enough? My understanding is that an arrest alone without conjunction of some other investigation or an accusation that hasn't been proven or vetted through any sort of verification by the agency itself... An accusation? I mean, I just don't think police officers going around arresting people on accusations, right? I mean, isn't there something more that usually an arrest requires? Probable cause? I don't know, something to believe that they actually did what they did? I mean, just an allegation is enough? I'm just trying to understand why an arrest isn't enough, but an indictment is. Because that's the only thing that is at issue in this case, as far as I can tell. So I'm trying to understand what are the circumstances that cause an arrest to occur, and we've concluded, and we're bound by the law, that an arrest alone isn't enough. What makes this different then? If you can't answer me the questions about criminal law, I'll give you a pass on that. But what makes this different from those arrest cases? I would admit I am no expert on criminal law, but I think my understanding is an arrest alone is not sufficient for the agency to rely on the fact of an arrest itself to satisfy the crime exception. So an arrest does not, in and of itself, establish a reasonable cause, because it hasn't gone through some sort of independent vetting process, whether that process is done by the agency itself through an investigation, or through an independent ex parte arm, like a grand jury. And here are you relying exclusively on the indictment as providing the reasonable cause? Yes, Your Honor. It's exclusively the indictment, not the underlying actions that supposedly supported the indictment. Does the indictment generally include evidence beyond what was included when the person was arrested? Because I'm trying to get at, you know, Mr. Brown has raised the argument that his client had no opportunity to participate in the indictment, no opportunity to see even whatever evidence is presented. So how is it that I should, why should I conclude that that indictment, nonetheless, gets over the reasonable cause hurdle when the arrest did not? Well, that is supported by precedent, and in the indictment itself, it is a finding by the grand jury, by an independent arm, that one, a crime has occurred, and two, in this case, Mr. Henderson, the person indicted with that crime, probably committed those crimes. So that's the fact that the agency is relying upon when it points to an indictment to justify the crime exception in 7513-8. Don't you think when someone's arrested, the officer believes a crime has occurred and that that person has committed it? I mean, don't those seem like absolute predicates to an arrest? I mean, any reasonable arrest? I would think so. Again, I don't want to opine to it. And wouldn't that officer be an independent third party, apart from the agency, usually? You know? So again, I'm just trying to get at the distinction between arrest and indictment, where why that indictment is a much more powerful indicator of reasonable cause than an arrest. Well, I believe that the police officer in executing the arrest, and of course, in this case, the arrest actually occurred after the indictment, so I suppose it depends in part on whether it's arrest in connection with a suspicion by the police officer, who judges for himself whether or not he suspects somebody of a crime and then executes an arrest. And then there's a vetting process, whether it's through an arraignment or through a grand jury procedure, to determine whether or not, in fact, the police officer was justified in making his decision. And that's the step that occurred with the grand jury. In this case, the prosecution brought charges to the grand jury. The grand jury then verified that the prosecution did have probable cause to bring the charges that, in fact, it charged Mr. Henderson with. And that this is clearly established in the case law, that probable cause, as established by the grand jury, is the same threshold as reasonable cause under 7513 for the agency to rely upon. But why wouldn't probable cause for an arrest be good enough, then? Maybe my problem isn't that an indictment should be sufficient. Maybe my problem is that an arrest should be. That could be, Your Honor, but I don't believe that's relevant to the merits of this particular case. No, but I can't decide that, because the law, I have to follow precedent. And precedent says an arrest is not enough. So now I have to look at, if an arrest is not enough, why isn't an indictment enough? The arrest is executed by the same person who is determining that the reasonable cause exists. So the police officer, and I may be using the wrong terminology from criminal law, because, again, I'm not an expert, but reasonable suspicion or probable cause, whatever the police officer believes he or she possesses, he is also executing that action of perpetuating the arrest. Whereas, with a grand jury, one individual, the prosecutor, is coming in to state, I believe I have probable cause. And then the grand jury is adjudicating that and deciding that. So it's not just a matter of a third party separate from the employing agency, but it's a third party coming through and stating, I believe there's probable cause, and an independent arm agreeing with that and affirming that through the course of an indictment. And as you state, the precedent is clear that an indictment is sufficient to establish reasonable cause. And when that indictment alleges crimes for which imprisonment might be imposed and which have a nexus to the employment. And here, the alleged crime was that he committed criminal acts in the course of his employment, recruited other supervisees that he was charged with overseeing to commit these crimes in the course of their employment, and to the detriment of the veterans, of the veterans  So there's really no question that there was a nexus here, and that is sufficient to justify an indefinite suspension. And I'd like to clarify that Mr. Henderson did not lose his job as a result of the indictment. Mr. Henderson was placed on unpaid suspension, meaning he was not paid, but he did not lose his status as a government employee at that time. That did occur later. It's not part of the record in this case, but Mr. Henderson, had he been acquitted of his crime, had the prosecution dropped the charges and that followed through with the indictment, would have had the opportunity to come back to the agency and would have been able to seek back pay under the Back Pay Act. So it is misleading to state, as counsel has, that he lost his job and he was taken out of employment solely as a result of this indictment. Mr. Henderson's due process arguments appear to rest on the fact that he was entitled to pay before he was suspended, but the agency is simply not equipped or authorized to make that determination in and of itself, and that the requirements for due process were for him to receive notice of the charge against him, which was that he was going to be indefinitely suspended without pay pending his criminal proceedings, two, an explanation of the basis for the BA's decision, which was the fact of the indictment itself, and three, an opportunity to present his side, which he was afforded and which he took advantage of. This is very much an aside, but do you have any idea, I assume that the 2,700 cases and all the ones in particular that were identified as cases where he closed them contrary to the veteran's medical opportunities, needs, I don't know how to frame it, but I assume all those were opened back up again and treatment was received as necessary? I would hope so. As a factual matter, Your Honor, I don't know, unfortunately. I know, it's not relevant to the interview, I get it. But Mr. Henderson also tries to create some sort of exception to the rules in Dunnington and the other case law that I cited in our brief by arguing that somehow the grand jury was the cat's paw at the VA because the agency presented all of the arguments to the grand jury, presented all of the evidence to the grand jury. On this record, there is no evidence that that actually occurred, number one. And number two, it's irrelevant to the VA's actual basis for suspending Mr. Henderson, which was the fact of the indictment as supported in the case law. Unless the panel has any other questions for me. No, I think we're clear. I'll ask the court to affirm, please. Mr. Brown, you have some rebuttal time left. First, let me say that it is a fact that the referrals did go back through the system automatically. They absolutely did go back through. And even at trial, some of those people had actually seen the people that they were referred to. You had asked a very interesting question about an arrest and what's the difference. And the difference that counsel came up with is that there's some sort of third party intervening in the arrest process. There is not some third party intervening. And I would point out that in this case, the complainant in this case was the agency. They were the ones that sought the indictment. And they were the ones that presented the evidence to the grand jury. So without anybody there representing Mr. Henderson's side, it's the same thing. It's the same practical effect of using an arrest warrant on which you're going to. Well, I guess one difference is an arrest is a single officer who gets credited with an arrest. And a grand jury is a jury of peers in a more objective moment. Arrests usually take place at times of crimes often. And a grand jury is a more independent body. And it's made up of not just one person, but a whole group. The difference being that in this case, all they heard, all they hear is the evidence of the complainant. In the process of an arrest, you may be in a police department where you have a structure of hierarchy that reviews that process. If all you hear from is the arresting officer and the complainant, it's not good enough. And all I'm saying is that in this case, that can't be due process. If you don't have an opportunity to present your side of it, if you don't have notice of what you're being charged with, then I don't think there is any law. And Loudermill, we cited for the court in the brief, Loudermill holds that that is a requirement any time you're taking somebody's pay. Okay, thank you Mr. Brown. I thank both counsel. The case is taken under submission.